**Greg PAGE, et al., Appellants,**

v.

**SCAVUZZO, et al., Respondents.**

**No. WD 75337.**

Missouri Court of Appeals, Western District.

April 30, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 28, 2013.

Application for Transfer Denied Aug. 13, 2013.

Derek Teeter, Kansas City, MO, for Appellants.

Paul Campo, Lee's Summit, MO, for Respondents.

Before: KAREN KING MITCHELL, P.J., THOMAS H. NEWTON, and LISA WHITE HARDWICK, JJ.

THOMAS H. NEWTON, Judge.

*Mr. Greg Page, Ms. Debra Ballard, and Friends of the Zoo, Inc.* of Kansas City, Missouri, a non-profit organization that operates the Kansas City Zoo under contract with Kansas City, (collectively, "FOTZ"), appeal from the trial court's summary judgment in favor of representatives of the Cass County Commission and the Cass County Election Authority (collectively, "Cass Commissioners").[1] We affirm.

## Factual and Procedural Background

In 2010, Missouri enacted several statutory provisions authorizing the establishment of a Kansas City Zoological District

---

1. FOTZ's suit was filed against Mr. William Cook, Associate Commissioner, Ms. Janet Burlingame, County Clerk for Cass County and the County's Election Authority, and Mr. Brian Baker, a Commission member, in their official capacities. Mr. Cook resigned in January 2012, and Mr. Luke Scavuzzo was appointed to Mr. Cook's prior position.

(KC Zoo District).[2] *See* H.B. 2297, 2010 Mo. Laws 772 (adding sections 184.500, 184.503, 184.506, 184.509, and 184.512). Section 184.503[3] as enacted permits any eligible county to create or participate in the KC Zoo District and to impose a sales tax not exceeding one-fourth of one percent. Jackson County and Clay County placed the sales tax implementation on their November 8, 2011, ballots; voters approved both measures.

FOTZ sought to have Cass County participate in the KC Zoo District and to implement the relevant county sales tax. In August 2011, they submitted a petition to the Cass Commissioners signed by 2,720 Cass County voters seeking to put the question of Cass County's participation in the KC Zoo District to the voters. Specifically, in their petition to the Cass Commissioners, they stated:

> We, the undersigned, as residents of Cass County, Missouri hereby petition the County Commission of Cass County, Missouri for the creation of the Kansas City Zoological District, which shall consist of the county of Jackson and any other eligible county whose voters authorize the county to create or participate in the Kansas City Zoological District, and for the levy and collection of a retail sales tax of one eighth of one percent to be collected for the benefit of the Kansas City Zoological District for the support of zoological activities in the district.

The ballot title they sought to put before the voters asked:

> Shall a retail sales tax of one eighth of one percent be levied and collected for the benefit of the Kansas City Zoological District, which shall be created and consist of the counties of Jackson and any other eligible county whose voters authorize the county to create or participate in the Kansas City Zoological District, for the support of zoological activities in the district?

The Cass County Clerk certified that the petition had the required number of signatures. The Cass Commissioners, however, refused to place the measure on the ballot.

FOTZ filed a petition in circuit court, seeking a declaration that section 184.503 required the Cass Commissioners to place the petition question on the November 8, 2011, ballot or, in the alternative, for the court to declare that the Cass Commissioners were required to submit the question to the voters at the next election. Both parties filed motions for summary judgment.

After hearing arguments, the trial court found there was no genuine issue of material fact because the sole issue was the interpretation of section 184.503. It determined that the plain and ordinary language of section 184.503 showed that the Commission had discretion as to whether to place the petition question on the ballot and granted judgment in favor of the Commission. FOTZ appeals.

## Standard of Review

Our review of the appeal of a summary judgment " 'is essentially *de novo.*' " *Arbor Inv. Co., LLC v. City of Hermann,* 341 S.W.3d 673, 678 (Mo. banc 2011) (quoting

---

**2.** "In reviewing an appeal from a summary judgment, uncontradicted facts set forth in the pleadings, discovery or affidavits presented to the trial court are taken as true, according the nonmovant the benefit of all reasonable inferences." *Butler v. Mitchell-*

*Hugeback, Inc.,* 895 S.W.2d 15, 17 (Mo. banc 1995).

**3.** Statutory references are to RSMo 2000 and the Cumulative Supplement 2011. Rule references are to the Missouri Rules of Civil Procedure 2012.

*ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993)). Summary judgment is proper if the moving party demonstrates a lack of any "genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Id.* (quoting Rule 74.04(c)(6)). We review the record in the light most favorable to the nonmovant and draw the reasonable inferences from the record in that party's favor. *Id.* Our review of a trial court's interpretation and application of a statute is also *de novo. Buehrle v. Mo. Dep't of Corrs.*, 344 S.W.3d 269, 271 (Mo.App. E.D.2011).

### Legal Analysis

FOTZ contends that the trial court erred in granting summary judgment in favor of the Cass Commissioners because section 184.503.1 required the Commission to submit the ballot question to the voters. The sole issue before us is a question of law: whether section 184.503 imposes a mandatory duty on the Cass Commissioners.

Section 184.503.1 provides in relevant part:

> *The governing body of any eligible county may, by resolution, authorize the creation of or participation in a district,* and may impose a sales tax on all retail sales made within the eligible county.... Such creation of or participation in such district and the levy of the sales tax may be accomplished individually or on a cooperative basis with another eligible county or other eligible counties for financial support of the district. *A petition requesting such creation of or participation in such district and the levy of the sales tax for the purpose of funding the support of zoological activities within the district may also be filed with the governing body,* and shall be signed by not less than the

number of qualified electors of an eligible county equal to five percent of the number of ballots cast and counted at the last preceding gubernatorial election held in such county. *No such resolution adopted or petition presented under this section shall become effective unless the governing body of the eligible county submits to the voters residing within the eligible county at a state general, primary, or special election a proposal to authorize the governing body of the eligible county to create or participate in a district and to impose a tax under this section.*

(emphasis added). To date, no Missouri appellate court has interpreted this provision.

Our role in statutory construction is to ascertain the legislature's intent from the plain and ordinary meaning of the words it used. *State ex rel. Zoological Park Subdistrict of City & Cnty. of St. Louis v. Jordan*, 521 S.W.2d 369, 372 (Mo.1975); § 1.090. We give significance and effect to each word, phrase, and sentence. *BHA Grp. Holding, Inc. v. Pendergast*, 173 S.W.3d 373, 377 (Mo.App. W.D.2005). "Where the language of a statute is clear and unambiguous, there is no room for construction." *Ryder Student Transp. Servs., Inc. v. Dir. of Revenue, State of Mo.*, 896 S.W.2d 633, 635 (Mo. banc 1995). However, if the plain meaning is ambiguous, we may look to the statute's history and the circumstances surrounding its passage. *Zoological Park Subdistrict*, 521 S.W.2d at 372.

Simplified to the components disputed by the parties, the plain language of section 184.503 states that (1) "the governing body ... may, by resolution, authorize the creation of or participation in a district"; (2) "[a] petition requesting such creation of or participation in such district ... may also be filed with the governing body"; and (3) "[n]o such resolution adopted or

petition presented ... shall become effective unless the governing body of the eligible county submits to the voters residing within the eligible county at a state general, primary, or special election a proposal to authorize the governing body of the eligible county to create or participate in a district."

Based on these provisions, the trial court determined that the statute's unambiguous, plain, and ordinary meaning is that the Cass Commissioners are the "ultimate arbiter[s]" of whether to submit a valid zoo district petition question to the voters. The court based its determination specifically on subsection 184.503.1's negative-contingent language providing that "No ... petition presented under this section shall become effective *unless* [the county commission submits the question to a vote]" (emphasis added). From this language, the trial court concluded that a petition submitted to the Cass Commissioners is not "self-actuating" because the first clause—a petition becoming effective—necessarily depends on the action in the second clause—the Cass Commissioners submitting the question to the voters. The trial court further relied on the legislature's choice of the word "requesting," when it stated that "[a] petition requesting such creation of or participation in such district ... may also be filed with the governing body."

FOTZ, however, argues that the statute sets up two procedures by which the question of the county sales tax for the zoo district may reach the voters: (a) the Cass Commissioners adopt a resolution, or (b) a valid petition is filed with the Cass Commissioners. It argues that in this latter case the Cass Commissioners are mandated to submit the issue to the voters.

### *"Unless"*

■ FOTZ takes issue with the trial court's interpretation of the clause containing the word "unless": "No such resolution adopted or petition presented under this section shall become effective unless the governing body of the eligible county submits...." § 184.503.1. FOTZ argues that "unless" does not indicate whether the Commission is required to submit the question to voters, and thus should not be read as bearing on the issue. Rather, it contends that "unless" means only that the Cass Commissioner's resolution or the voters' petition cannot become effective unless adopted by the voters.

We do not agree. FOTZ ignores one of our cardinal rules of statutory construction: we do not engraft language onto a statute that the legislature did not provide. *See Ryder Student Transp. Servs., Inc.,* 896 S.W.2d at 635. The provision does not state that no resolution or petition becomes effective *unless approved by* the voters. It states that no resolution or petition becomes effective unless the Cass Commissioners *submit it* to the voters. Nor does the provision state that the Cass Commissioners are required to submit the issue to the voters.

FOTZ further argues that interpreting "unless" as vesting the Cass Commissioners with a discretionary power leads to an absurd result because it would mean that even where the Cass Commissioners adopted a resolution calling for a zoo district, they would still have to submit it to the voters before it became effective. We do not agree that this outcome is absurd; it simply states the procedure for the resolution reaching the voters. Consequently, from the plain language of this provision, we find no support for FOTZ's argument that the Cass Commissioners have a mandatory duty to submit the petition to the voters.

### *"Requesting"*

Next, FOTZ takes issue with the trial court's reliance on the statute's use of the

word "requesting" where section § 184.503.1 provides that "A petition requesting ... such district ... may also be filed with the governing body[.]" FOTZ contends that the trial court erred because "requesting" merely refers to a request to the voters, not to the governing body. Again, we are bound by the plain language of the statute, which states simply that a request may be filed with the governing body. We read no more and no less into this sentence. *See City of Wellston v. SBC Commc'ns, Inc.*, 203 S.W.3d 189, 192 (Mo. banc 2006) (stating that we enforce statutes as they are written, "not as they might have been written"). Even if were we to accept FOTZ's argument, it does not support a conclusion that the Cass Commissioners are under a mandatory duty to submit the petition to the voters.

## Legislative History

■ FOTZ further contends that the trial court erred because it placed weight on the legislature's removal of the word "shall" while the bill was in Committee. The trial court determined that when House Bill 2297 was introduced, the measure stated that when a valid petition was filed, the statute would direct that "the governing body of such county shall request the county election officer to submit" the question to the voters. It also found that the disputed provisions containing the language "requesting" and "unless" were added as amendments. From this, the trial court determined that the legislature had expressly considered and then rejected language that would have imposed a mandatory duty on the Cass Commissioners. FOTZ argues that even if the legislature removed the word "shall," the term "shall" is not the only way to create a mandatory duty and "other principles of statutory construction and common sense dictate that the statute, as written, should nonetheless be construed as creating a mandatory duty."

It is true that "one of the accepted canons of statutory construction permits and often requires an examination of the historical development of the legislation," in order to ascertain legislative intent where a statute is conflicting or ambiguous. *City of Joplin v. Joplin Water Works Co.*, 386 S.W.2d 369, 374 (Mo. banc 1965). Ambiguity occurs where there is a "duplicity, indistinctness or uncertainty of meaning." *J.B. Vending Co., Inc. v. Dir. of Revenue*, 54 S.W.3d 183, 188 (Mo. banc 2001) (internal quotation marks and citation omitted). Here, because the statute cannot reasonably be read to impose a mandatory duty on the Cass Commissioners, there is no ambiguity requiring us to look outside the statutory language. *See Ryder Student Transp. Services, Inc.*, 896 S.W.2d at 635. Further, our supreme court has cautioned that the use of the history of a Missouri bill's enactment is not highly persuasive. *Butler v. Mitchell–Hugeback, Inc.*, 895 S.W.2d 15, 19 (Mo. banc 1995). This is because "[w]ords are routinely removed from bills during the course of the legislative process. Words may be deleted for many reasons, including because they are considered redundant, confusing or extraneous." *Id.* Even if we did look to the legislative history, the amendment omitting the word "shall" supports the trial court's interpretation and lends no weight to FOTZ's argument.

## St. Louis and Springfield Zoo Districts

■ Finally, FOTZ contends that the trial court erred because it read section 184.503 inconsistently with statutes governing the establishments of zoo districts in St. Louis and Springfield. It argues we must construe section 184.503 *in para materia* with section 184.350, which authorizes the establishment of a zoological park and museum district for St. Louis, and section 184.600, which provides for a Springfield zoo district.

*In para materia* refers to a rule of construction that directs that "consistent statutes relating to the same subject ... are construed together as though constituting one act, whether adopted at different dates or separated by long or short intervals." *State ex rel. Rothermich v. Gallagher,* 816 S.W.2d 194, 200 (Mo. banc 1991). The rule "proceeds upon the supposition that the statutes in question are intended to be read consistently and harmoniously in their several parts and provisions." *Id.* The fallacy in FOTZ's argument is that even if we were to apply this rule of construction to sections 184.503, 184.350, and 184.600, there is no inconsistency or disharmony in following each section's plain language.

Under subsection 184.350.1, voters within the city of St. Louis and the adjoining county may petition election officials to request that the officials submit a proposal to establish a zoological park and museum district to the voters. In contrast with section 184.503, which creates the KC Zoo District, subsection 184.350.1 specifically provides that once a verified petition has been received, "such officials *shall submit* the ... proposition ... to the qualified voters of such city and county." § 184.350.1 (emphasis added). Likewise, section 184.600.1 provides for the establishment of a Springfield zoo district, stating that "upon the petition of five percent of the qualified voters of the city," the ballot "question *shall be* submitted to the qualified voters." (emphasis added).[4] County residents outside Springfield "may

petition the county commission ... to become part of the metropolitan zoo district." § 184.600.2. When the county clerk has certified that the petition has the required signatures, "[t]he question *shall be submitted* to the qualified voters of the area." § 184.600.2 (emphasis added).

Rather than supporting FOTZ's argument, these sections illustrate that where the General Assembly has intended the ballot submission to be mandatory, it has so stated in plain and unambiguous terms. *See also* § 90.500 ("When one hundred voters ... shall petition ... asking that an annual tax be levied ... the mayor and common council *shall submit* the question to the voters."). Further, contrary to FOTZ's contention, there is no inherent inconsistency in the General Assembly's establishment of different procedures for creating or joining a zoological park and museum district in St. Louis, a Springfield zoo district, and a Kansas City zoo district.[5] Because the plain language of section 184.503 does not demonstrate that the legislature sought to impose a mandatory duty on the Cass Commissioners, FOTZ's point is denied.

### Conclusion

For the foregoing reasons, we affirm the trial court's judgment.

MITCHELL, P.J., and HARDWICK, J. concur.

---

4. The word "shall" generally establishes a mandatory duty. *Buehrle v. Mo. Dep't of Corrs.,* 344 S.W.3d 269, 271 (Mo.App. E.D. 2011).

5. FOTZ also raises constitutional arguments regarding the petition process. They argue that "if the Circuit Court's construction is taken at face value, it would mean that a single citizen, or even a dozen citizens acting

together, no longer has the right under Missouri law to submit a written document to the Commission indicating support for the Regional Zoo Question." Their argument is inaccurate. At issue is not the right to petition the Commissioners, but whether the Commission has a mandatory duty to submit the issue on the ballot.