

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| CINDY HUDSON, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD77055 |
| | ) | |
| KIMBERLY O'BRIEN, DEBRA | ) | Opinion filed:  October 21, 2014 |
| CHESHIER, AND GAIL VASTERLING, | ) | |
| | ) | |
| Respondent. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY, MISSOURI**
**THE HONORABLE PATRICIA S. JOYCE, JUDGE**

Before Division Three:  Gary D. Witt, Presiding, Judge,
Joseph M. Ellis, Judge and Thomas H. Newton, Judge

Appellant Cindy Hudson appeals from the Circuit Court of Cole County's grant of summary judgment in favor of Respondents Kimberly O'Brien and Debra Cheshier.[1] Appellant contends that the trial court erred in granting summary judgment because it construed § 105.055[2] too narrowly in concluding that her disclosures to Respondents

---

[1] Margaret Donnelly, the former Director of the Missouri Department of Health and Senior Services, was also named as a defendant in the suit.  Gail Vasterling, the current Director of the Missouri Department of Health and Senior Services, was subsequently substituted in Donnelly's place.  In granting Respondents' motion for summary judgment, the trial court found that Appellant's "claims against Vasterling do not state a claim" and, thus, granted summary judgment in favor of Vasterling.  Appellant does not challenge the trial court's findings related to Vasterling on appeal.

[2] Unless otherwise noted, all statutory citations are to RSMo 2000 as updated through the 2009 Cumulative Supplement.

did not constitute "whistleblowing" as a matter of law. For the following reasons, the judgment is affirmed in part and reversed and remanded in part.

In 2008, Appellant was employed by the Missouri Department of Health and Senior Services ("the Department") as a section administrator for the Section of Child Care Regulation ("SCCR"). SCCR is responsible for inspections of childcare facilities throughout the state of Missouri. Respondent O'Brien served as the Director of the Division of Regulation and Licensure, under which SCCR operated. Respondent Cheshier served as the Deputy Division Director. Thus, Respondents acted as Appellant's supervisors.

On July 24, 2008, Appellant and another employee of the Department conducted an inspection of Apple Tree Academy, a childcare facility in Jefferson City, Missouri. Following the inspection, the Department issued a report citing ten categories of rule violations found at Apple Tree Academy.

Karen Werner, owner of Apple Tree Academy, contacted the Department after the report was issued. Werner contested several of the violations listed in the report and sought to have the violations removed. Appellant authorized Sue Porting, a Department employee, to meet with Werner regarding Werner's complaints. After the meeting, Porting removed several of the rule violations cited in the report. Although Appellant authorized the removal of one of the violations, Appellant did not approve of Porting removing several others. Appellant reported Porting's removal of the violations to O'Brien and requested Porting be disciplined for her actions.

2

The Department received subsequent correspondences from Werner with respect to the original and the revised inspection reports. Werner further accused the Department of harassment due to the fact that Werner had been involved in stopping the Department's previous attempt to revise its rules regarding childcare facilities. Werner also contended that the Department inspectors were applying the rules and regulations inconsistently, especially as to her facilities. Werner was also concerned about the Department preparing to make inspection reports available online to the public.

Respondents subsequently asked Appellant to draft a written response regarding Werner's complaints so they could better respond to Werner. Respondent Cheshier also instructed Appellant that, "while [the Department is] trying to go through this rule revision process,[3] . . . it is best that we not cite rule violations at [Werner's] facilities that are not obvious safety concerns." Concerned about Cheshier's directive, Appellant sought further instruction from Respondents. While Respondents did not give Appellant any written instruction, a meeting occurred at which Respondents explained to Appellant that childcare facility inspections were part art and part science.

On November 28, 2008, Appellant wrote a memorandum to Respondents in response to Werner's complaints. In the memorandum, Appellant justified the rule violations cited at Apple Tree Academy and stated that removing the rule violations from the inspection report "put the Department at risk." The memorandum further responded

---

[3] In 2008, the Department was considering revising its rules and regulations. It is unclear from the record whether such revisions ever occurred.

to Werner's claims of harassment and suggested the rule violations had been removed from Apple Tree Academy's inspection report in order to prevent Werner's complaints from escalating beyond the SCCR and the Division of Regulation and Licensure. It also suggested that SCCR had shown such favoritism to Werner in the past.

On December 11, 2008, Appellant was notified of her termination, which would become effective January 15, 2009. The Department stated that Appellant was being fired because things just were not working out. After Appellant's termination, the memorandum written by Appellant in response to Werner's complaints was destroyed.

On February 4, 2009, Appellant appealed her termination to the Personnel Advisory Board. In her appeal, Appellant did not allege that she was terminated for whistleblowing; rather, she claimed she could not be fired without cause. On April 14, 2009, the Board denied Appellant's appeal, finding that she could be terminated without cause.

On March 12, 2009, Appellant filed the current action against Respondents alleging that Respondents violated § 105.055, Missouri's whistleblowing statute, by firing her for her disclosures regarding rule violations at Werner's facilities. In her third amended petition, Appellant alleges that "[t]he removal of the violations by the Department put the Department at risk for failure to follow its own regulations and the laws of the State of Missouri and also put the children at risk." Appellant further alleges that Cheshier told her "not to cite rule violations at Werner's facilities" and that she complained verbally and in writing to Respondents that the removal of rule violations

4

was a danger to the Department and to the children and "misrepresented to the public and to Karen Werner that there were no violations of [Missouri's rules and regulations].

On June 28, 2013, Respondents filed a motion for summary judgment in which they alleged Appellant was not entitled to relief under § 105.055 as a matter of law. On October 31, 2013, the trial court granted summary judgment on six grounds: (1) Appellant's complaints of wrongdoing to the alleged wrongdoers were not whistleblowing as a matter of law; (2) complaints made only to supervisors are not whistleblowing as a matter of law under § 105.055; (3) Respondents' alleged misconduct does not warrant protection under § 105.055; (4) Appellant's claims against Vasterling do not state a claim; (5) Appellant failed to exhaust her administrative remedies prior to filing her § 105.055.7 civil action; and (6) Appellant's damages are limited to non-economic damages as a matter of law.

Appellant now raises four points of error on appeal from the trial court's grant of summary judgment. "The grant of summary judgment is an issue of law that an appellate court determines *de novo*." **Brehm v. Bacon Twp.**, 426 S.W.3d 1, 3 (Mo. 2014). We review "the record in the light most favorable to the party against whom judgment was entered and give[] the non-movant the benefit of all reasonable inferences from the record." **Id.** at 3-4 (internal quotation omitted).

"To prevail on a motion for summary judgment, the movant must show that there is no dispute of material fact and that he is entitled to judgment as a matter of law." **Lucero v. Curators of Univ. of Mo.**, 400 S.W.3d 1, 4 (Mo. App. W.D. 2013) (internal

quotation omitted). "We may affirm the circuit court's grant of summary judgment under any theory that is supported by the record." *Id.* (internal quotation omitted).

Furthermore, each of Appellant's four points involves a question of statutory interpretation. We review a trial court's interpretation and application of a statute *de novo*. *Page v. Scavuzzo*, 412 S.W.3d 263, 266 (Mo. App. W.D. 2013).

In her first point, Appellant contends that the trial court misconstrued § 105.055 when it determined that she failed to make a disclosure under the statute. The trial court concluded that "reporting wrongdoing to the alleged wrongdoers is not 'whistle blowing' as a matter of law" under the statute. In reaching its conclusion, the trial court relied upon common law wrongful discharge cases in which Missouri courts have held that "a report of wrongdoing to the wrongdoer is insufficient to invoke the whistleblowing public policy exception" to the at-will employment doctrine. *Drummond v. Land Learning Found.*, 358 S.W.3d 167, 171 (Mo. App. W.D. 2011); *see also Faust v. Ryder Commercial Leasing & Servs.*, 954 S.W.2d 383, 391 (Mo. App. W.D. 1997) *abrogated on other grounds by Fleshner v. Pepose Vision Inst., Inc.*, 304 S.W.3d 81, 93 (Mo. banc 2010).

Missouri common law wrongful discharge whistleblower cases do require disclosures to persons other than the wrongdoers. However, this not a common law wrongful termination case. Rather, this a purely statutory cause of action set forth under § 105.055. Therefore, to determine whether Appellant made a disclosure as a matter of law, we must construe § 105.055.

6

Our "primary responsibility in statutory interpretation is to determine the legislative intent from the language of the statute and to give effect to that intent." *Balloons Over the Rainbow, Inc. v. Dir. of Revenue*, 427 S.W.3d 815, 825 (Mo. banc 2014) (internal quotation omitted). "If the intent of the legislature is clear and unambiguous, by giving the language used in the statute its plain and ordinary meaning, then we are bound by that intent and cannot resort to any statutory construction in interpreting the statute." *State ex rel. Union Elec. Co. v. Pub. Serv. Comm'n of Mo.*, 399 S.W.3d 467, 479-80 (Mo. App. W.D. 2013) (internal quotation omitted). "However, statutory provisions relating to the same subject matter are considered in *pari material* and are to be construed together." *Crawford v. Div of Emp't Sec.*, 376 S.W.3d 658, 664 (Mo. banc 2012) (internal quotation omitted).

When construed together, the provisions of § 105.055 do not exclude reports of wrongdoing to the wrongdoers. Section 105.055 provides:

> No supervisor or appointing authority of any state agency shall . . . [p]rohibit a state employee from or take any disciplinary action[4] whatsoever against a state employee . . . for the disclosure of information which the employee reasonably believes evidences: (a) A violation of any law, rule or regulation; or (b) Mismanagement, a gross waste of funds or abuse of authority, or a substantial and specific danger to public health or safety, if the disclosure is not specifically prohibited by law[.]

**§ 105.055.2(1)(a)-(b)**. Thus, while § 105.055 requires the disclosure of information by a state employee, it does not identify to whom the disclosure of information must be made. Rather, it provides only that disciplinary action cannot be taken against state

---

[4] "Disciplinary action," as used in § 105.055, means "any dismissal, demotion, transfer, reassignment, suspension, reprimand, warning of possible dismissal or withholding of work, whether or not the withholding of work has affected or will affect the employee's compensation." **§ 105.055.4**.

employees for the disclosure of certain information.  Therefore, the focus of § 105.055 is not to whom a disclosure is made, but whether a disclosure was made.

The statute does not define the term "disclosure."  "Absent a statutory definition, words used in statutes are given their plain and ordinary meaning with help, as needed, from the dictionary."  *Balloons Over the Rainbow*, 427 S.W.3d at 825 (internal quotation omitted).  The dictionary defines "disclosure" as "[t]he act or instance of disclosing: the act or an instance of opening up to view, knowledge, or comprehension: exposure . . . something that is disclosed: revelation, divulgation."[5]  **Webster's Third New International Dictionary of the English Language Unabridged** 645 (1961). *Black's Law Dictionary* defines disclosure as "[t]he act or process of making known something that was previously unknown; a revelation of facts."  **Black's Law Dictionary** 531 (9th ed. 2009).  Thus, the plain and ordinary meaning of "disclosure" is the exposure or revelation of something previously unknown.

Respondents rely on this definition as evidence that an employee does not make a "disclosure" under the statute when it discloses information to the wrongdoer because, in doing so, the employee has failed to reveal something previously unknown. In making their argument, Respondents rely upon federal case law interpreting the Whistleblower Protection Act ("the WPA"), 5 U.S.C. § 2302.  *See Huffman v. Office of Personnel Mgmt.*, 263 F.3d 1341, 1349-50 (Fed. Cir. 2001) (explaining that reports to the wrongdoers are not protected disclosures under the WPA because "'disclosure'

---

[5] "Disclose" means "[t]o make known . . . [t]o reveal in words (something that is secret or not generally known)."  **Webster's Third New International Dictionary of the English Language Unabridged** 645 (1961).

means to reveal something that was hidden and not known" and finding it significant that the legislature "did not use a word with a broader connotation such a 'report' or 'state'"). However, recent amendments to the WPA have abrogated the federal courts' interpretation of the term "disclosure." *See* **5 U.S.C. § 2302(8)(f)(1)** (Supp. 2014) ("A disclosure shall not be excluded from [protection] because . . . the disclosure was made to a supervisor or to a person who participated in an activity that the employee or applicant reasonably believed to be covered by [the statute or] the disclosure revealed information that had been previously disclosed").[6]

Moreover, Respondents have failed to recognize that § 105.055 includes language absent from the WPA. Section 105.055.7 creates a civil action for employees alleging violations of § 105.055. Section 105.055.7(3) provides: "An employee must show by clear and convincing evidence that he or she or a person acting on his or her behalf *has reported or was about to report*, verbally or in writing, a prohibited activity or a suspected prohibited activity." (Emphasis added). The dictionary defines "report" to mean "to give an account of: NARRATE, RETALE, TELL." **Webster's Third New International Dictionary of the English Language Unabridged** 1925 (1961). Therefore, under the plain language of the statute, a state employee must show, by clear and convincing evidence, that he or she or a person acting on his or her behalf

---

[6] Respondents contend that we should not consider the recent amendments to the WPA because the Missouri legislature has not amended § 105.055 in a similar fashion. In doing so, Respondents aver that Missouri adopted § 105.055 with the intent that reports to the wrongdoers were not protected. However, Missouri enacted § 105.055 in 1987. Respondents cite no cases prior to 1987 interpreting the WPA to require disclosures to persons other than the wrongdoers. Furthermore, no Missouri courts have interpreted the statute since its enactment. Accordingly, we cannot say the legislature's intent was aligned with the federal courts previous interpretation of the term "disclosure."

9

has given or was about to give an account that he or she reasonably believes evidences prohibited activity or a suspected prohibited activity.[7]

Under the broad language used in § 105.055.7, Appellant did not fail to make a disclosure as a matter of law. Appellant alleges she reported Porting's removal of rule violations from the inspection report and Cheshier's directive to cite only obvious safety violations at Werner's facilities. Respondents do not contest that Appellant made such complaints. Rather, they contend only that such complaints did not constitute disclosures because Appellant made them to "the wrong people."[8] As previously discussed, § 105.055 contains no requirement as to whom disclosures must be made. Accordingly, given the broad language used in § 105.055.7(3) and viewing the evidence in the light most favorable to Appellant, we cannot say that Appellant failed, as a matter of law, to make disclosures under the statute.

The trial court further concluded that Appellant was not entitled to relief because complaints "made only to supervisors are not 'whistle blowing' as a matter of law under § 105.055." In reaching its conclusion, the trial court reasoned that the purpose of § 105.055 is to encourage employees to disclose government wrongdoing to persons who may be in a position to remedy the problem without fearing retaliatory action by their

---

[7] It is worth mentioning that interpreting § 105.055 to require reports or disclosures to those not involved in the wrongdoing overlooks the very plausible situation in which an employee is unaware that the individual he or she is reporting the wrongdoing to is actually a wrongdoer.

[8] We note that, even if we were to accept Respondent's interpretation of the term "disclosure," their own statement of facts indicates that, at the time Appellant reported the conduct, O'Brien was not a wrongdoer. Respondents' brief states that Appellant "reported to O'Brien that Porting removed the rule violations from the inspection report." Moreover, it is clear from the record that initially only Cheshier, not O'Brien, gave Appellant the instruction to cite only obvious rule violations at Werner's facilities. The fact that O'Brien subsequently acquiesced or approved of the alleged wrongdoing does not negate the fact that Appellant initially revealed such information to her or at least gives rise to a factual dispute on the matter.

10

supervisors.  Thus, it concluded that the persons and bodies enumerated in § 105.055.1 identified such individuals "in a position to remedy the problem" and that "[t]he structure of [§ 105.055] makes obvious that it protects state employees reporting misconduct to persons enumerated in [§ 105.055.1] from retaliation by persons enumerated in [§ 105.055.2]."

Nothing in the statute's structure, however, supports the trial court's interpretation.  As previously explained, § 105.055.2 prohibits supervisors or appointing authorities from taking disciplinary action against state employees for the disclosure of certain types of information.  Section 105.055.1 provides: "No supervisor or appointing authority of any state agency shall prohibit any employee of the agency from discussing the operations of the agency, either specifically or generally, with any member of the legislature, state auditor, attorney general, or any state official or body charged with investigating such alleged misconduct."  Section 105.055.1, therefore, proscribes supervisors or appointing authorities from prohibiting employees from discussing agency operations with the enumerated individuals and bodies.  Thus, the two sections prohibit a supervisor or appointing authority from disciplining employees for two separate and distinct types of conduct.  Nothing suggests that the individuals enumerated in § 105.055.1 are also applicable to § 105.055.2.  Accordingly, the trial court erred in granting summary judgment on the basis that complaints made only to supervisors are not "disclosures" as a matter of law.  Point granted.

In her second point, Appellant contends the trial court erred in finding that the information disclosed was not protected under § 105.055.  Section 105.055.2 requires

that the employee reasonably believes the disclosed information evidences "(a) [a] violation of any law, rule or regulation; or (b) [m]ismanagement, a gross waste of funds or abuse of authority, or a substantial and specific danger to public health or safety, if the disclosure is not specifically prohibited by law[.]" **§ 105.055.2(1)(a)-(b)**. Therefore, to be entitled to relief under the statute, the employee must disclose information he or she reasonably believes evidences (1) a violation of any law, rule, or regulation, (2) mismanagement, (3) a gross waste of funds, (4) a gross abuse of authority, or (5) a substantial and specific danger to public health or safety.

The trial court determined that Respondents committed no misconduct and, even if they did, "it was *de minimus* and not within the scope of the statute's protections as a matter of law." In doing so, the trial court focused upon the fact that there was no specific law, rule, or regulation that prohibited Respondents from reviewing and revising inspection reports or instructing a subordinate employee on how to cite rule violations. The trial court is correct that that there is no law, rule, or regulation specifically prohibiting Respondents' conduct. Additionally, as Respondents point out, Appellant fails to allege in her petition any law, rule, or regulation that her disclosures reasonably evidence was violated.

Nevertheless, the trial court failed to address Appellant's allegations that her disclosures evidenced a danger to the public's health and safety. Appellant clearly alleges in her petition that the removal of the rule violations and the instruction not to cite rule violations at Werner's facilities put the children at risk and misrepresented to

12

the public that Werner's facilities were in compliance with childcare facility rules and regulations.

As Appellant points out, § 210.221(3) gives the Department the power and the duty to "promulgate and issue rules and regulations the department deems necessary or proper in order to establish standards of service and care to be rendered by such licensees to children." Section 210.221(2) further provides that the Department has a duty to "inspect the conditions of the homes and other places in which the applicant operates a child-care facility . . . [and to] deny, suspend, place on probation or revoke the license of such persons as fail to obey . . . the rules and regulations made by the department[.]" Thus, the Department has a duty to promulgate rules and regulations regarding childcare facilities and to deny, suspend, place on probation or revoke the license of such persons that fail to obey those rules and regulations.

If the Department removes violations from inspection reports and cites only obvious safety violations, it could result in the Department failing to suspend, revoke, or place on probation childcare facilities that fail to meet the Department's established standards of service and care to children. There is evidence in the record that the purpose of the Department's rules and regulations is to protect the children in Missouri childcare facilities. There is further evidence in the record that failing to cite rule violations has the potential to put children's safety at risk. Thus, it can be inferred from the evidence that if the Department fails to cite rule violations at Werner's facilities, then the safety of children at those facilities is potentially at risk. Accordingly, it was not unreasonable for Appellant to believe that her disclosure regarding Cheshier's directive

to cite only obvious safety concerns at Werner's facilities evidenced a specific threat to public safety.

Moreover, there is evidence in the record to support the belief that removal of rule violations from inspection reports has the potential to put children at risk. One of the violations removed from the Apple Tree Academy inspection report was that there was grass and bare soil, not impact-absorbing material, in the "fall-zone" under the outdoor playground equipment. *See* **19 C.S.R. § 30-62.082(6)(A)5** ("The fall-zone area under and around outdoor equipment where children might fall and be injured shall be covered with impact-absorbing materials which will effectively cushion the fall of a child); **19 C.S.R. § 30-62.082(6)(A)8** ("Concrete, asphalt, carpet, grass or bare soil is not an acceptable surface under outdoor equipment from which children might fall and be injured"). Evidence in the record indicates that, by removing such a rule violation from an inspection report, the facility could continue to operate without implementing the material required under the Department's rules and regulations. Again, the Department's rules and regulations are intended to protect children in Missouri childcare facilities. Therefore, one can infer from the record that the removal of rule violations from inspection reports has the potential to put the safety of children in those facilities at risk.

Respondents aver that Appellant could not have reasonably believed her disclosures evidenced a specific and substantial threat to public safety because her complaints were merely a concern for the Department, not for the children's or public's safety. They further contend that the disclosures amounted to a simple policy dispute

between Appellant and her supervisors about how to apply the Department's rules and regulations consistently. As previously discussed, there is evidence in the record to support Appellant's allegations that she reasonably believed her disclosures evidenced a threat to public safety. While Respondents' arguments pertain to whether Appellant's disclosures are protected under the statute, they do not entitle Respondents to judgment as a matter of law. Rather, they reflect that there are genuine issues of material fact that must be decided by the trier of fact, specifically whether Appellant reasonably believed her disclosures evidenced a specific and substantial threat to public safety. Accordingly, the trial court erred in finding that Appellant failed to prove her disclosures were protected under § 105.055 as a matter of law. Point granted.[9]

In her third point, Appellant contends that the trial court erroneously concluded that she had to exhaust the administrative remedy set forth under § 105.055.5 before she was entitled to bring this civil suit pursuant to § 105.055.7. In concluding that

---

[9] Respondents further cite to **Margiotta v. Christian Hospital Northeast Northwest**, 315 S.W.3d 342 (Mo. banc 2010), for the proposition that Appellant failed to disclose specific threats to public safety. However, unlike the present action, *Margiotta* involves a Missouri common law wrongful discharge action, which requires a plaintiff to plead and prove elements not required under the plain language of § 105.055. In *Margiotta*, a hospital employee filed a common law wrongful discharge action on the basis that he was fired for continuously reporting safety violations to his supervisors. *Id.* at 345. In support of his claims, the employee cited to two regulations, one of which provided that "[t]he patient has the right to receive care in a safe setting" and the other, which provided that "[a]ny safety hazard or threat to the general safety of patients, staff, or the public shall be corrected." *Id.* at 348 (internal quotation omitted). The Missouri Supreme Court concluded that the regulations cited by the employee failed to specifically proscribe the conduct the employee reported and were too vague to support a wrongful discharge action. *Id.* In reaching its conclusion, the Court explained that common law wrongful discharge claims "must be based on a constitutional provision, a statute, a regulation based on a statute or a rule promulgated by a governmental body." *Id.* at 346. The "pertinent inquiry" in a wrongful discharge case is "whether the authority clearly prohibits the conduct at issue in the action." *Id.* at 347. Such is not the pertinent question in statutory whistleblower claims under § 105.055. Rather, plaintiffs must establish only that "the employee reasonably believes" his or her disclosure "evidences: (a) [a] violation of any law, rule or regulation; or (b) [m]ismanagement, a gross waste of funds or abuse of authority, or a substantial and specific danger to public health or safety, if the disclosure is not specifically prohibited by law[.]" **§ 105.055.2(1)(a)-(b)**. Accordingly, Respondents' reliance upon *Margiotta* is misplaced.

15

Appellant must seek an administrative appeal prior to filing a civil suit, the trial court focused on the "[i]n addition to" language in § 105.055.7(1), which provides: "In addition to the remedies in [§ 105.055.5],[10] a person who alleges a violation of this section may bring a civil action for damages within ninety days after the occurrence of the alleged violation."

The trial court reasoned that such language "must mean a supplement to relief an employee is already pursuing. Thus, where an employee . . . elects not to pursue administrative relief, there is no remedy for [a] civil action to be '*[i]n addition to.*'" The "in addition to" language, however, merely indicates that, besides the remedies set forth in § 105.055.5, a plaintiff may file a civil action alleging a § 105.055 violation. Thus, § 105.055.7 creates an additional remedy available under the statute.[11]

Moreover, nothing in § 105.055.5 suggests that an employee must seek administrative relief before pursuing a civil action. Rather, the section provides that the "employee *may* file an administrative appeal whenever the employee alleges that disciplinary action was taken against the employee in violation of [§ 105.055]." **§ 105.055.5** (emphasis added). Thus, the trial court erred in concluding that Respondents were entitled to summary judgment because Appellant failed to seek administrative relief prior to filing this civil action. Point granted.

---

[10] Section 105.055.7(1) actually states "[i]n addition to the remedies in subsection 6 of this section . . . ." Subsection 6, however, provides: "Each state agency shall prominently post a copy of this section in locations where it can reasonably be expected to come to the attention of all employees of the agency." **§ 105.055.6**. Thus, as the parties note and agree, the legislature likely intended to refer to subsection 5, which pertains to administrative appeals.

[11] It should be noted that, prior to 2004, § 105.055.5 provided the only remedy available to employees alleging violations of the statute.

16

Finally, in her fourth point, Appellant avers that the trial court erred in finding that she is limited to a claim for non-economic damages as a matter of law. The trial court determined that Appellant "waived her claim for damages beyond non-economic damages by failing to pursue her administrative appeal." However, as previously explained, Appellant was not required to file an administrative appeal prior to bringing this civil action.

Thus, Appellant is entitled to the remedies provided for under § 105.055.7. Section 105.055.7(4) provides: "A court, in rendering a judgment in an action brought pursuant to this section, shall order, as the court considers appropriate, actual damages, and may also award the complainant all or a portion of the costs of litigation, including reasonable attorney fees." Appellant, therefore, is entitled to recover actual damages[12] as well as litigation costs and attorney fees. Thus, the trial court erred in granting summary judgment on the basis that Appellant is limited to recovery of non-economic actual damages.

To the extent Appellant contends she is entitled to equitable relief, such as reinstatement, such remedy is not provided for in the statute and, thus, is unavailable to Appellant. *See* **Sanders v. Ahmed**, 364 S.W.3d 195, 205 (Mo. banc 2012) ("The General Assembly has the right to create causes of action and to prescribe their remedies."). Accordingly, the trial court correctly determined Appellant is not entitled to equitable relief under the statute. Point denied in part and granted in part.

---

[12] Actual damages are the "amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses." **Black's Law Dictionary** 445 (9th ed. 2009).

In sum, the trial court correctly determined that Appellant is not entitled to equitable relief under § 105.055. However, the trial court erroneously concluded that Appellant failed to establish that she was entitled to relief under the statute as a matter of law and, therefore, erred in granting summary judgment in Respondents' favor. Thus, we reverse the trial court's judgment and remand the case for further proceedings consistent with this opinion.

_____
Joseph M. Ellis, Judge

All concur.