

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| COLLEEN SPURLOCK, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD85580 |
| | ) | |
| CITY OF COLUMBIA, MISSOURI, | ) | Opinion filed:  April 18, 2023 |
| | ) | |
| Respondent. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI**
**THE HONORABLE J. HASBROUCK JACOBS, JUDGE**

Division Three:  Janet Sutton, Presiding Judge,
Cynthia L. Martin, Judge and Edward R. Ardini, Jr., Judge

Colleen Spurlock ("Spurlock") appeals from the judgment of the Circuit Court of Boone County dismissing her petition against her former employer, the City of Columbia, Missouri, ("City") in which she seeks relief under Missouri's public-employee whistleblower statute, section 105.055, RSMo.[1] We reverse and remand for further proceedings.

---

[1] Statutory citations are to the Missouri Revised Statutes, updated through the 2021 supplement.

## Factual and Procedural Background[2]

Spurlock began working for the City as a management fellow beginning in July 2020. Spurlock's domestic partner also worked for the City. On June 21, 2021, a city council meeting was held where the council was expected to consider an amendment to a city ordinance that capped raises for city employees at ten percent per year. Spurlock attended the meeting as part of her job duties. Her partner and several employees from the City's IT and finance departments also attended the meeting in support of amending the pay raise ordinance. One of the IT employees spoke at the meeting in favor of changing the ordinance, but no amendment to the ordinance was proposed. It had been Spurlock's understanding that a proposed amendment had been drafted and was ready for presentation so, following the meeting, Spurlock inquired of the assistant city manager why the proposed amendment had not been offered at the meeting. The assistant city manager indicated that the city manager did not wish to move forward with the amendment at that time.

City Manager John Glascock ("City Manager"), who was on vacation when the council meeting occurred, discovered upon his return that the employees had attended the meeting in support of changing the ordinance. He viewed the employees' attendance at the meeting as a betrayal of his leadership. In response, City Manager sent a message to the city finance director criticizing the employees' actions and rescinding his prior approval

---

[2] "When reviewing a motion to dismiss, we assume all of the petition's averments are true and liberally grant all reasonable inferences drawn therefrom." *Richest v. City of Kansas City*, 643 S.W.3d 610, 612 n.2 (Mo. App. W.D. 2022) (citing *Hartman v. Logan*, 602 S.W.3d 827 n.2, 836 (Mo. App. W.D. 2020)).

for several new positions in the IT department. In the same time frame, City Manager denied Spurlock's partner permission to attend a conference in Portland, Oregon, with several other city employees, including Spurlock, citing a city policy prohibiting romantic partners from traveling together on city business.

Spurlock reported to the human resources director that City Manager had denied her partner's request to attend the conference relying on the aforementioned city policy. The human resources director informed Spurlock that the city had no such policy. Two days later, City Manager placed Spurlock on indefinite administrative leave. Spurlock also learned that her partner and the other employees who had attended the city council meeting had been placed on administrative leave as well. Spurlock's partner was told by City Manager that the suspension was based on insubordination for attending the June 21 council meeting.

On July 22, Spurlock met with City Manager about her suspension. City Manager stated that she was on administrative leave because she had criticized the assistant city manager for not presenting an amendment to the pay-raise ordinance at the June 21 council meeting and because she had "inserted [herself] into a decision [City Manager] made about sending [her partner] to Portland and you all went over to see [the human resources director] about it together[.]" Spurlock explained to City Manager that there existed no city policy prohibiting romantically involved employees from traveling together, to which City Manager stated "[t]hat is not your decision. I approve all travel." Spurlock responded by telling City Manager, "[t]hat is an abuse of power if it is not in the administrative policies." At that point, City Manager offered Spurlock "two choices: you can either voluntarily

3

resign with two weeks' salary or I'm releasing you Friday at 5:00 p.m." Spurlock submitted her resignation the following morning.

Spurlock brought the present action against the City seeking relief under Missouri's public-employee whistleblower statute, section 105.055, RSMo. The City filed a Motion to Dismiss, alleging that Spurlock failed to state a claim under the statute, arguing that she did not make a "disclosure" within the meaning of the statute; she did not report a covered action under the statute; and she did not suffer a "disciplinary action." The City also alleged that the whistleblower statute is unconstitutionally vague, arguing that it "does not sufficiently place defendants on notice of what conduct is statutorily prohibited."

The trial court dismissed the suit with prejudice without specifying which of the asserted grounds provided the basis for the dismissal. Spurlock appeals.

**Standard of Review**

"We review the trial court's decision to grant a motion to dismiss *de novo*." *Hartman v. Logan*, 602 S.W.3d 827, 835 (Mo. App. W.D. 2020) (citing *Tuttle v. Dobbs Tire & Auto Ctrs., Inc.*, 590 S.W.3d 307, 310 (Mo. banc 2019)). "Where, as here, the trial court did not specify the basis for its decision to grant the Motion to Dismiss, we presume the dismissal was on a basis set forth in the motion to dismiss[.]" *Id.* (citing *Tuttle*, 590 S.W.3d at 310). "[I]f the dismissal cannot be sustained on any of the grounds alleged in the motion, we must reverse." *Duffner v. City of St. Peters*, 482 S.W.3d 811, 816 (Mo. App. E.D. 2016) (citing *In re Estate of Austin*, 389 S.W.3d 168, 171 (Mo. banc 2013)).

"'A motion to dismiss for failure to state a claim on which relief can be granted is solely a test of the adequacy of the petition.'" *Hartman*, 602 S.W.3d at 835 (quoting *Tuttle*, 590 S.W.3d at 310). "'We review the petition to determine if the plaintiff has alleged facts

4

that meet the elements of a recognized cause of action[.]'" *Id*. at 835-36 (quoting *McDonald v. Chamber of Com. of Independence*, 581 S.W.3d 110, 114 (Mo. App. W.D. 2019)) (additional quotation and citation omitted). "Missouri is a 'fact-pleading state[;]'" but the plaintiff must only plead ultimate facts, not evidentiary facts. *Richest*, 643 S.W.3d at 614 (quoting *R.M.A. by Appleberry v. Blue Springs R-IV Sch. Dist.*, 568 S.W.3d 420, 425 (Mo. banc 2019)). "'Ultimate facts are those the jury must find to return a verdict for the plaintiff.'" *Id*. (quoting *R.M.A. by Appleberry*, 568 S.W.3d at 425).

### Discussion

Spurlock raises a single point on appeal alleging the trial court erred in dismissing her claim, arguing that she pleaded facts sufficient to state a claim under section 105.055, RSMo, and that the statute is not unconstitutionally vague.

Section 105.055, "protects public employees by prohibiting any supervisor . . . of any public employer from taking 'any disciplinary action whatsoever against a public employee for the disclosure of . . . information which the employee reasonably believes evidences' a violation of any law, rule, or regulation, or other wrongful activity'" such as mismanagement or abuse of authority. *Richest*, 643 S.W.3d at 613 (quoting § 105.055.3(1)(b), RSMo). "Simply put, a public employer cannot retaliate against a public employee for reporting certain types of wrongdoing." *Id*. In order to prove a claim under section 105.055, RSMo, "[a] public employee shall show by clear and convincing evidence that he or she or a person acting on his or her behalf has reported or was about to report, verbally or in writing, a prohibited activity or a suspected prohibited activity." § 105.055.7(3), RSMo.

"When interpreting section 105.055, our primary rule is 'to give effect to legislative intent as reflected in the plain language of the statute at issue.'" *Richest*, 643 S.W.3d at 614 (quoting *Parktown Imp., Inc. v. Audi of Am., Inc.*, 278 S.W.3d 670, 672 (Mo. banc 2009)). "'If the intent of the legislature is clear and unambiguous, by giving the language in the statute its plain and ordinary meaning, then we are bound by that intent and cannot resort to any statutory construction in interpreting the statute.'" *Hudson v. O'Brien*, 449 S.W.3d 87, 91 (Mo. App. W.D. 2014) (quoting *State ex rel. Union Elec. Co. v. Pub. Serv. Comm'n*, 399 S.W.3d 467, 479-80 (Mo. App. W.D. 2013)). "'Absent a statutory definition, words used in statutes are given their plain and ordinary meaning with help, as needed, from the dictionary.'" *Id.* at 92 (quoting *Balloons Over the Rainbow, Inc. v. Dir. of Revenue*, 427 S.W.3d 815, 825 (Mo. banc 2014)).

### *City's Constitutional Challenge to section 105.055, RSMo[3]*

The City claims that section 105.055, RSMo, is unconstitutionally vague. Spurlock argues that the City lacks standing to bring such a challenge.[4] We agree.

"The doctrine of vagueness stems from the due process clause." *Jackson Cnty. v. State*, 207 S.W.3d 608, 614 (Mo. banc 2006). It is well-settled that "[p]olitical subdivisions,

---

[3] We are cognizant that "[u]nder Article V, section 3 of the Missouri constitution, the Missouri Supreme Court has exclusive jurisdiction in all cases involving the validity of a statute.'" *Chesterfield Spine Ctr., LLC v. Best Buy Co., Inc.*, 617 S.W.3d 450, 460 (Mo. App. W.D. 2021) (quoting *State ex rel. Mo. Hwy. & Transp. Comm'n v. Greenwood*, 269 S.W.3d 449, 458 (Mo. App. W.D. 2008)). However, we are able to dispense with this claim based on our finding that the City lacks standing to bring a constitutional challenge for vagueness. *See State v. Jones*, 892 S.W.2d 737, 739 (Mo. App. W.D. 1994) ("[t]he mere assertion that a statute is unconstitutional does not deprive the court of appeals of jurisdiction; this court has jurisdiction to determine if the appellant has standing to raise a constitutional argument").

[4] Spurlock asserts that the City waived this claim before the trial court. The City disagrees. Nothing in the record before us supports such waiver.

such as [cities], are not 'persons' within the protection of the due process clause of the United States Constitution." *Id*. As such, cities cannot bring a vagueness challenge to statutes. *See Jackson Cnty.*, 207 S.W.3d at 614 (finding that Jackson County was not a person under the due process clause and thus could not bring a vagueness challenge to a statute); *City of Chesterfield v. Dir. of Revenue*, 811 S.W.2d 375, 377 (Mo. banc 1991) (stating that the city had no "personal" due process or equal protection rights and can thus not meet the standing requirement to challenge the constitutionality of a statute); *State ex rel. Brentwood Sch. Dist. v. State Tax Comm'n*, 589 S.W.2d 613, 615 (Mo. 1979) (holding that "creatures of the state established to perform governmental functions[ ] are not persons within the protections of the due process clause and cannot charge the state with violations of due process"). Likewise, here, the City is not a "person" under the due process clause and does not have standing to bring a vagueness challenged to section 105.055, RSMo.

### *Failure to State a Claim*

We next turn to whether Spurlock adequately pleaded a claim under section 105.055, RSMo, upon which relief can be granted. Spurlock alleged in her petition that the City violated the whistleblower statute by suspending and constructively discharging her after she informed the human resources director and City Manager that City Manager had denied her partner the ability to travel with her and other employees to a conference, citing an allegedly non-existent policy, which Spurlock reasonably believed constituted an abuse of authority by City Manager. Viewing the facts alleged in her petition and all inferences supporting those facts as true, Spurlock sufficiently stated a claim under section 105.055, RSMo.

*"Disclosure"*

We first address City's argument that Spurlock's petition fails to allege that she made a "disclosure" under section 105.055, RSMo. The term is not defined in the statute; but this Court has previously held that "disclosure" means "the exposure or revelation of something previously unknown." *Hudson*, 449 S.W.3d at 92. "Therefore, under the plain language of the statute, a [public] employee must show, by clear and convincing evidence, that he or she or a person acting on his or her behalf has given or was about to give an account that he or she reasonably believes evidences prohibited activity or a suspected prohibited activity." *Id*.

The City posits that Spurlock's allegation that she reported the alleged misconduct to City Manager does not constitute a "disclosure" under the whistleblower statute because City Manager was also the alleged wrongdoer. Contrary to the City's theory, a disclosure made to an alleged wrongdoer falls within the reach of section 105.055, RSMo. *See Hudson*, 449 S.W.3d at 91 ("the provisions of § 105.055 do not exclude reports of wrongdoing to the wrongdoers").

Moreover, the City's argument ignores that Spurlock also asserted that she reported City Manager's alleged misconduct to the City's human resources director. In the petition, she specifically alleged that "[o]n July 7, 2021, Plaintiff reported to [the] City HR Director . . . that City Manager . . . had denied [Spurlock's partner's] request to attend a Conference in Portland with several other City employees, including Plaintiff, purportedly because City policy prohibited romantically involved employees from traveling together." This alleged report to the human resources director was independently sufficient to satisfy the "disclosure" requirement found in section 105.055, RSMo.

8

Next, we consider the City's claim that Spurlock did not sufficiently plead that she disclosed "information which the employee reasonably believes evidences . . . abuse of authority."[5] The City asserts that Spurlock "simply cannot claim that the City Manager's exercise of authority to approve or disapprove travel by City employees at the City's expense constitutes an 'abuse of authority' within the meaning of Section 105.055[,]" arguing that City Manager is authorized to approve travel requests by ordinance.

The City's argument misapprehends the current posture of the case. As previously explained, at this point of the litigation, we are simply testing the adequacy of Spurlock's petition and, in doing so, are required to assume all allegations in the petition are true. The City will have an opportunity to challenge those allegations through the production of ordinances and other evidence in due course. In addition, the City's argument reflects a presumption that proof of the existence of an ordinance authorizing City Manager to approve travel requests will, alone, defeat Spurlock's action. It will not. The critical question is not whether City Manager possessed such authority but instead, whether such authority was *abused*.

In this appeal, however, we need only determine whether Spurlock sufficiently pleaded facts that she "reasonably believed" that the City Manager had engaged in an "abuse of authority." *See Hudson*, 449 S.W.3d at 96 n.9 ("whether the authority clearly prohibits the conduct at issue in the action . . . is not the pertinent question in statutory

---

[5] Spurlock claimed in her petition that the City Manager committed abuse of authority and mismanagement, but she argues only for abuse of authority on appeal. Thus, we consider only whether she sufficiently pleaded that she reasonably believed City Manager engaged in abuse of authority.

whistleblower claims under § 105.055. Rather, plaintiffs must establish only that 'the employee reasonably believes' his or her disclosure 'evidences . . . abuse of authority'"). In her petition, Spurlock alleged that she reported City Manager's actions to the human resources director and questioned whether the policy upon which City Manager relied existed. After learning that the purported policy did not exist, she confronted City Manager, asserting that his action was "an abuse of power if [the policy] is not in the administrative policies." Through these allegations, Spurlock sufficiently pleaded facts that she "reasonably believe[d her] disclosure evidence[d] . . . abuse of authority."

*"Disciplinary action"*

Finally, we must determine whether Spurlock has sufficiently pleaded facts establishing that she was subject to "disciplinary action." The City argues that Spurlock was already suspended before she confronted City Manager about his alleged abuse of authority and that City Manager's ultimatum to Spurlock to resign or be dismissed did not constitute a disciplinary action under the statute. We disagree.

Section 105.055, requires that "[n]o supervisor . . . of any public employer shall: . . . take any disciplinary action whatsoever against a public employee for . . . the disclosure information which the employee reasonably believes evidences . . . abuse of authority[.]" § 105.055.3(1)(b), RSMo. Disciplinary action is defined as "any dismissal, demotion, transfer, reassignment, suspension, reprimand, warning of possible dismissal or withholding of work[.]" § 105.055.1(1), RSMo. Suspension is specifically enumerated in the definition. The City disregards that Spurlock alleges that she initially reported City Manager's actions to the human resources director *before* she was suspended by City Manager. In fact, according to the petition, City Manager told Spurlock that her suspension

10

was, in part, based on her report to the human resources director. Thus, the suspension would constitute a "disciplinary action" under section 105.055, RSMo. Moreover, after she confronted City Manager with his alleged misconduct, he immediately provided her with an ultimatum that she either resign or be fired. Regardless of whether offering Spurlock the option to either resign or be fired was tantamount to a constructive discharge and thereby synonymous with a "dismissal," the ultimatum plainly falls within the phrase "warning of possible dismissal." Therefore, Spurlock sufficiently alleged that she was subjected to a disciplinary action as that term is defined under section 105.055, RSMo.

Based on the foregoing, the trial court erred in dismissing Spurlock's petition with prejudice.

Point granted.

## Conclusion

The judgment of the trial court is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

_____
EDWARD R. ARDINI, JR., JUDGE

All concur.

11