250 F.Supp.2d 1139 (2003)
James SIFFERMAN, Plaintiff,
v.
BOARD OF REGENTS, SOUTHEAST MISSOURI STATE UNIVERSITY, et al., Defendants.
No. 1:01CV162 CDP.
United States District Court, E.D. Missouri, Southeastern Division.
March 11, 2003.
*1140 Michael H. Maguire, Johnson and Maguire, Cape Girardeau, MO, for plaintiff.
Diane C. Howard, James B. Baehr, Limbaugh and Russell, Cape Girardeau, MO, for defendants.

MEMORANDUM AND ORDER
PERRY, District Judge.
James Sifferman brought this employment discrimination action against the Board of Regents of Southeast Missouri State University. Sifferman alleges that the University unlawfully denied him a promotion to full professor in retaliation for his testimony against the University in an unrelated sexual discrimination case in 1995-96. The University filed a motion for summary judgment arguing that Sifferman failed to timely file his charge of discrimination *1141 with the EEOC and that there is no evidence showing a causal connection between his testimony against the University and the later denials of his promotion.
On March 7, 2003, I held a hearing at which the parties presented oral argument and submitted further evidence in support of their summary judgment positions. After careful consideration of the facts and applicable law, I find that Sifferman's complaint is not barred by the statute of limitations and that there are genuine issues of material fact concerning causality. Therefore, I will deny the University's motion for summary judgment.

FACTS
In 1987, Dr. James Sifferman was hired as an assistant professor by Southeast Missouri State University in its music department. In 1992, Sifferman was promoted to associate professor, a position that he currently holds. Under the University's faculty promotion policy, Sifferman was entitled to seek promotion to full professor once every academic year. The University's policy provides that judgments concerning a candidate's promotion are made by examining evidence at the department, college, and university levels.
The first level of evaluation is the department level. The University's faculty promotion policy states in relevant part:
The department has the principal, but not exclusive, responsibility to evaluate the competency of the faculty member for both promotion and tenure. This is appropriate since both tenure and promotion relate to the specific discipline. However, since the department constitutes but one emphasis in the college and the college one component of the University, both the Dean of the College and the Provost have fundamental roles in the effective operation of the promotion process. Ultimately, as in all major decisions, it is action by the Board of Regents which is legally binding.
The policy provides that a department promotion committee first evaluates a candidate's application and makes a recommendation to the department chairperson, who in turn makes a separate recommendation. If the chairperson and department committee disagree, they meet to resolve any differences. If a consensus is not reached, then the chairperson's recommendation is forwarded to the Dean of the College along with any dissenting or minority opinions.
If a faculty member does not accept an unfavorable recommendation, the candidate has ten days from the receipt of notification to seek further review of his or her application. The candidate can make a request to meet with the chairperson to try to reach a joint understanding about the denial. If no agreement is reached, the policy states that "the faculty member may request that his/her candidacy be reached at the college level. Such requests will be considered without prejudice by the College Promotion Committee. If the unfavorable recommendation is sustained at this level, the review process ends."
Sifferman repeatedly and unsuccessfully sought promotion to full professor during the academic years 1996-97, 1997-98, 1998-99, and 1999-2000. Sifferman was notified of the denial of his promotion at the departmental level for the 1999-2000 academic year prior to December 15, 1999. On that day, he sent a letter to Dr. Martin Jones, the Dean of College of Liberal Arts, notifying him of his intent to appeal the promotion denial to the college level. Dean Jones subsequently notified Sifferman that his appeal was unsuccessful on February 1, 2000.
On February 9, 2000, Sifferman reflected on why he was constantly being *1142 denied a promotion to full professorship. He concluded that it relates to a sexual harassment complaint filed in 1995 against the University by Dr. Louisa Panou-Takahashi, who was denied tenure. Sifferman supported Panou-Takahashi's application for promotion. Sifferman testified before the Missouri Commission (MCHR) on Human Rights on February 16, 1995 on behalf of Panou-Takahashi and against thendepartment chairperson Dr. Sterling Cossaboom and Dean Jones. He also gave a deposition on September 12,1996.
Cossaboom allegedly stated that Sifferman had acted "uncollegial" and that he would never get promoted. He also reportedly told another professor, Dr. Robert M. Gifford, Jr., that as long as he was around, Sifferman would never get promoted. In fact, the only year Cossaboom was not on the department promotion committee Sifferman's application was approved, only to be later denied at the college level by Dean Jones. Sifferman also contends that Cossaboom threatened him with a lawsuit. In their depositions, Cossaboom and Dean Jones testified that they had no knowledge of the content of Sifferman's testimony in Panou-Takahashi's sexual harassment case. In fact, Cossaboom denies knowing that Sifferman testified before the MCHR.
On November 21, 2000, Sifferman filed an unsigned and unverified Intake Questionnaire with the Equal Employment Opportunity Commission (EEOC). George W. Marteen, an investigator with the EEOC, sent Sifferman a letter on December 21, 2000, notifying him that he must file a charge of discrimination with the EEOC within 300 days of the alleged act. In February of 2001, Sifferman resent his information to the EEOC, which allegedly lost his paperwork. On April 26, 2001, Marteen mailed Sifferman a Form 5 charge of discrimination that had been prepared for Sifferman's signature. Sifferman signed the prepared charge on May 15 and filed it with the EEOC on May 22, 2001. The EEOC then forwarded the charge to the MCHR, which opened a file relating to Sifferman's charge and closed it on August 21, 2001.

SUMMARY JUDGMENT STANDARD
To determine whether to grant summary judgment, I must view the facts and inferences from the facts in the light most favorable to the plaintiff. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Defendants have the burden to establish both the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the defendants have met this burden, the plaintiff may not rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists.
At the summary judgment stage, I will not weigh the evidence and decide the truth of the matter, but rather must only determine if there is a genuine issue for trial. Liberty Lobby, All U.S. at 249, 106 S.Ct. 2505. Rule 56(c) of the Federal Rules of Civil Procedure mandates entry of summary judgment against a party, if after adequate time for discovery, that party fails to make a showing sufficient to establish the existence of an essential element of the case that the party will have the burden of proving at trial. Celotex, All U.S. at 322-23,106 S.Ct. 2548.

DISCUSSION
The University argues that summary judgment is proper because Sifferman's *1143 charge of discrimination was not timely filed. The University contends that the Intake Questionnaire did not constitute a valid charge of discrimination, that December 15, 1999 is the operative date of the last adverse employment action, and that the MCHR did not close its case until after the 300-day limitations period had expired. Alternatively, the University argues that Sifferman has failed to produce any evidence establishing a causal connection between an adverse employment action and his protected activity under law.

Timeliness of Charge of Discrimination
The University first argues the Intake Questionnaire did not serve as a timely filed charge of discrimination because Sifferman did not sign it and because the EEOC did not view it as one. Eighth Circuit cases have consistently held that intake questionnaires which are neither signed under oath nor verified do not satisfy the statutory requirement for an administrative charge. See Shempert v. Harwich Chem. Corp., 151 F.3d 793, 796 (8th Cir.1998); Lawrence v. Cooper Communities, Inc., 132 F.3d 447, 450 (8th Cir.1998); Schlueter v. Anheuser-Busch, Inc., 132 F.3d 455, 458 (8th Cir.1998).
The Supreme Court's decision in Edelman v. Lynchburg College, 535 U.S. 106, 122 S.Ct. 1145, 152 L.Ed.2d 188 (2002), appears to overrule these cases. The Supreme Court upheld an EEOC regulation, 29 C.F.R. § 1601.12(b), which allows a technically flawed charge of discrimination to be perfected by later amendment. In Edelman, the fact that the a complainant's original letter was unverified did not serve as a procedural bar. Applying this reasoning to this case, Sifferman's failure to sign and verify the Intake Questionnaire is not fatal because, under EEOC regulations, he later perfected his charge of discrimination by filing a Form 5 charge.
The Supreme Court in Edelman, however, did not reach the question of what constitutes a charge of discrimination. A charge is liberally interpreted and must include, inter alia, "the full name, address, and telephone number of the person making the charge" and "[a] clear and concise statement of the facts." 29 C.F.R. § 1601.12(a). Notwithstanding other provisions, a "charge is sufficient when the [EEOC] receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." Id. § 1601.12(b).
On remand in the Edelman case, the Fourth Circuit held that plaintiffs letter was a valid charge of discrimination despite the EEOC's actions to the contrary. 300 F.3d 400, 404-05 (4th Cir.2002). "Once a valid charge has been filed, a simple failure by the EEOC to fulfill its statutory duties regarding the charge does not preclude a plaintiffs Title VII claim." Id. at 404. In this case, the EEOC's failure to consider Sifferman's Intake Questionnaire as a charge of discrimination does not affect its validity. Sifferman should not be penalized for the EEOC's statutory inaction regarding his charge.[1]
The University next argues that December 15, 1999, the date the department denied Sifferman's promotion, was the date of the last adverse employment action. The University cites in support Delaware State College v. Ricks, 449 U.S. 250, 261, 101 S.Ct. 498, 66 L.Ed.2d 431 *1144 (1980) (noting that filing a grievance after the University's final decision did not toll the statute of limitations). However, the University's promotion policy allows a faculty member who does not accept an unfavorable recommendation to seek further review of his application without prejudice. Sifferman sought review from the college level, which affirmed the department's decision and definitively ended the University's review process on February 1, 2000. This is the date of the last adverse employment action.
Although I find that February 1, 2000 is the operative date of the last adverse employment action, I do agree with the University's contention that a failure to promote is a discrete act of discrimination and is not a continuing violation, as Sifferman suggests. See National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061, 2072-74, 153 L.Ed.2d 106 (2002). The University's promotion policy permits a faculty member to apply for a promotion only once an academic year. Therefore, Sifferman cannot recover damages for the promotion denials that took place before the 1999-2000 academic year.[2]
The University also argues that because the MCHR did not close its case until after the 300-day limitations period, Sifferman's charge was not timely filed with the EEOC. Although the University essentially abandoned this position during the hearing on March 7, 2003, I will nevertheless address its merits. Under 42 U.S.C § 2000e-5(e)(1), a complainant's administrative charge must be filed with the EEOC:
within one hundred and eighty days after the alleged unlawful employment practice occurred ..., except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency ..., such charge shall not be filed ... within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earliest.
Under 42 U.S.C. § 2000e-5(c), however, a charge is not officially filed with the EEOC until "sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated." Where the state proceedings extend beyond the 60-day period, the EEOC filing is held for that time in "suspended animation" and is not officially filed in the statutory sense until the expiration of 60 days. Schlosser v. Westinghouse Elec. Co. LLC, 2001 WL 1746574 at *1 (E.D.Mo. Dec.18, 2001).
In a deferral state like Missouri, a plaintiff must file his charge within 240 days of the allegedly discriminatory practice to preserve his rights, unless the state agency completes or stops its inquiry before the 300 day mark. This provides the state agency with the first opportunity to investigate the charge. Alternatively, some states in their worksharing agreements with the EEOC waive their right to the exclusive 60-day processing period with regard to certain types of charges. See Worthington v. Union Pac. R., 948 F.2d 477, 479 (8th Cir.1991); Shepherd v. Kansas City Call, 905 F.2d 1152, 1153 (8th Cir.1990).
Because there exists a worksharing agreement between the EEOC and the MCHR, so-called simultaneous filings with both agencies are possible. Mo.Rev.Stat. § 213.075(2). The worksharing agreement *1145 provided by the University at the hearing, also contains the following waiver:
For charges originally received by the EEOC and/or to be initially processed by the EEOC, the [MCHR] waives its right of exclusive jurisdiction to initially process such charges for a period of 60 days for the purpose of allowing the EEOC to proceed immediately with the processing of such charges before the 61st day.
Because the MCHR has waived its exclusive jurisdiction to investigate charges for the first 60 days under 42 U.S.C. § 2000e-5(b), the University's argument that the charge of discrimination was untimely filed with the EEOC lacks merit. I find that Sifferman's EEOC charge was properly filed within 300 days of the last promotion denial on February 1, 2000.

Causal Connection
As an alternate ground for summary judgment, the University argues that Sifferman cannot demonstrate a causal connection between his promotion denials and his testifying against Cossaboom and Dean Jones in the sexual harassment suit. In order to establish a prima facie case of retaliation, Sifferman must show the following: (1) he engaged in a statutorily protected activity; (2) an adverse employment action; and (3) a causal connection between the two events. LaCroix v. Sears, Roebuck, and Co., 240 F.3d 688, 691 (8th Cir.2001).
The substance of the University's argument is that too much time elapsed between 1995 and the last promotion denial. The University relies primarily on termination cases to support this contention. However, the "passage of time between events does not by itself foreclose a claim of retaliation; rather, it weakens the inference of retaliation that arises when a retaliatory act occurs shortly after a complaint." Smith v. St. Louis University, 109 F.3d 1261, 1266 (8th Cir.1997). Moreover, there is direct and indirect evidence showing that Cossaboom disliked Sifferman and was intent on making sure he never got promoted to full professor, and a jury might conclude that this was because of Sifferman's testimony against Cossaboom. Because there are genuine issues of material fact remaining in this case, I will deny summary judgment.
Accordingly,
IT IS HEREBY ORDERED that defendant's motion for summary judgment [# 27] is denied.
NOTES
[1] I note that the University does not challenge the status of the Intake Questionnaire as a charge of discrimination based on its substantive contents. See Edelman v. Lynchburg College, 300 F.3d at 404. Therefore, it is not necessary for me to consider whether the contents of the Intake Questionnaire (notwithstanding the missing "attached" pages) satisfy the liberal definition of a charge under 29 C.F.R. § 1601.12(b).
[2] The University's failure to promote Sifferman to full professor is the only act of retaliation alleged in his Form 5 charge and pleaded in his complaint.