In the
 Missouri Court of Appeals
 Western District
 B. RICHEST, )
 )
 Appellant, ) WD84464
 )
 v. ) OPINION FILED:
 ) February 15, 2022
 CITY OF KANSAS CITY, )
 MISSOURI, )
 )
 Respondent.

 Appeal from the Circuit Court of Jackson County, Missouri
 The Honorable Patrick William Campbell, Judge

Before Special Division: Cynthia L. Martin, Chief Judge, Presiding, Gary D. Witt, Judge
 and W. Brent Powell, Special Judge

 B. Richest ("Richest") appeals from the Circuit Court of Jackson County's ("trial

court") grant of the motion to dismiss for failure to state a claim upon which relief can be

granted filed by City of Kansas City, Missouri ("City"). Richest filed a petition alleging

whistleblower violations pursuant to section 105.055 against City.1 City moved to dismiss

the claim, solely arguing the statute of limitations barred Richest's civil claim. In a single

 1
 All statutory references are to R.S.Mo. 2016, as updated by the most recent supplement unless otherwise
indicated.
point on appeal, Richest argues the trial court erred in sustaining City's motion to dismiss

because the petition alleged a violation that occurred within one year of the filing of the

cause of action. We reverse and remand for further proceedings.

 Factual Background2

 Richest worked for City as a Public Works Inspector for twelve years. In February

2019, Richest had a conversation with his supervisor about a time sheet discrepancy from

his previous shift. During the previous shift, Richest worked overtime due to a snow event.

The supervisor instructed Richest to retroactively change the hours on his time sheet from

his overtime shift to reflect the time he had stopped working during his lunch break.

Richest explained to his supervisor it was common practice for employees to record ten

hours of overtime regardless of whether a lunch break was taken. The supervisor told

Richest if he did not change the time sheet she would "do it for him." The operative

collective bargaining agreement ("CBA") required City management to inform the union

in writing regarding changes to any established work rules.

 Later that day, Richest was told by management to go home for the day due to a

pending investigation regarding the conversation he had with the supervisor. The next day,

Richest met with management and his union representative in the morning and was

permitted to return to work. However, Richest was later informed he had been suspended

for two weeks without pay. The union representative requested Richest's paperwork from

management. The following week, management informed Richest he was no longer

 2
 When reviewing a motion to dismiss, we assume all of the petition's averments are true and liberally grant
all reasonable inferences drawn therefrom. Hartman v. Logan, 602 S.W.3d 827, 836 (Mo. App. W.D. 2020).

 2
suspended, he could return to work, and he would receive full backpay for the days he was

suspended. In April 2019, Richest was informed he was being terminated from his position

because he was accused of threatening his supervisor. Richest believed he was actually

terminated for "pointing out to [the supervisor] that she was violating company policy" by

changing the hours on the time sheet without informing the union in writing.3

 Richest was terminated from his position on April 5, 2019. Richest appealed his

termination through the internal procedures provided by City, and a hearing was held

before the City's Human Resources Board ("Board") on July 16, 2019. The Board upheld

Richest's termination on November 5, 2019. Richest then filed a civil suit against City,

pursuant to section 105.055.7, on November 2, 2020. City filed a motion to dismiss for

failure to state a claim upon which relief can be granted alleging solely that Richest's civil

action was filed outside the time permitted by the applicable statute of limitations. The

trial court granted City's motion finding Richest's petition was filed outside the one-year

statute of limitations for filing a civil suit from his date of termination. This appeal follows.

 Standard of Review

 "We review the trial court's decision to grant a motion to dismiss de novo."

Hartman, 602 S.W.3d at 835. When a statute of limitations defense is raised, we must give

the pleading its broadest intendment, treat all facts as true, and construe the allegations

favorably to the plaintiff. Sheehan v. Sheehan, 901 S.W.2d 57, 59 (Mo. banc. 1995).

"Where a statute of limitations is asserted in support of a motion to dismiss, the petition

 3
 In his petition, Richest also alleges "he received this unjust and unfair treatment on the basis of his
race[,]" though the sole count in the petition alleges violations of Missouri's whistleblower statute. Richest did not
claim race discrimination pursuant to any state or federal law.

 3
should not be dismissed unless the petition clearly establishes on its face and without

exception that it is time barred." Patel v. Pate, 128 S.W.3d 873, 877 (Mo. App. W.D.

2004). "A motion to dismiss properly raises the defense of the statute of limitations when

it is clear from the face of the petition that the action is barred by time limitations." Id.

"Conversely, where the petition does not show on its face that it is barred by limitations, a

motion to dismiss should not be sustained." Id.

 Discussion

 Richest alleges violations of Missouri's whistleblower statute for public employees,

section 105.055. The statute protects public employees by prohibiting any supervisor or

appointing authority of any public employer from taking "any disciplinary action

whatsoever against a public employee for the disclosure of any alleged prohibited activity

under investigation or any related activity, or for the disclosure of information which the

employee reasonably believes evidences" a violation of any law, rule, or regulation, or

other wrongful activity, such as mismanagement or gross waste of funds. Section

105.055.3(1)(a)-(b). "Disciplinary action" is defined in the statute as "any dismissal,

demotion, transfer, reassignment, suspension, reprimand, warning of possible dismissal or

withholding of work, regardless of whether the withholding of work has affected or will

affect the employee's compensation." Section 105.055.1(1). Simply put, a public employer

cannot retaliate against a public employee for reporting certain types of wrongdoing.

Richest alleges the City violated the statute because it took disciplinary action against him

in the form of a "dismissal" after he informed his supervisor she had violated the CBA

work rules.

 4
 Section 105.055 provides non-exclusive avenues for certain public employees to

remedy an employer's violation of the statute.4 First, "any state employee may file an

administrative appeal whenever the employee alleges that disciplinary action was taken

against the employee in violation of this section." Section 105.055.5 (emphasis added).

This appeal "shall be filed with the administrative hearing commission[,]" and the "appeal

shall be filed within one year of the alleged disciplinary action." Id. The commission may

modify or reverse the agency's action and may recommend discipline for the violating

employer. Id. And, the decision of the commission can then itself be appealed as permitted

by law. Id. Second, "a person who alleges a violation of this section may bring a civil

action against the public employer for damages within one year after the occurrence of the

alleged violation." Section 105.055.7.

 Richest relies on the second avenue for securing relief in his petition and argues the

trial court erred in granting City's motion to dismiss because he filed suit "within one year

after the occurrence of the violation." Because Richest's suit was filed November 2, 2020,

the "occurrence of the violation" must have taken place after November 2, 2019. The sole

event alleged in the petition that occurred after November 2, 2019, was the Board's decision

from his appeal to uphold Richest's termination. Accordingly, to satisfy the statute of

limitations, the Board's decision to uphold Richest's termination must qualify as

"disciplinary action" as defined in section 105.055.1(1). Given the procedural posture of

 4
 The methods of redress outlined in section 105.055 are not the exclusive remedies, as the statute also
permits "any other remedies provided by law." See section 105.005.5.

 5
this case, it must be clear from the face of the petition that the Board's decision to uphold

Richest's termination did not constitute a "disciplinary action" as so defined.

 As an initial matter, City argues Richest's petition does not state a claim because

Richest never alleged the Board's decision was a disciplinary action under the statute.

Missouri is a "fact-pleading state." R.M.A. by Appleberry v. Blue Springs R-IV School

Dist., 568 S.W.3d 420, 425 (Mo. banc 2019). "But the facts that must be pleaded are the

ultimate facts, not evidentiary facts." Id. "Ultimate facts are those the jury must find to

return a verdict for the plaintiff." Id. Exercising a faithful application of the standard of

review, which "assumes that the allegations set forth are true and liberally grants the

plaintiff reasonable inferences based on those allegations," see id., Richest's petition is

factually sufficient. Richest alleged: he was terminated from his position as a public works

inspector on April 5, 2019; a hearing for the appeal of his termination was not scheduled

until July 16, 2019; the decision to uphold his termination was issued on November 5,

2019; and he was subjected to disciplinary action by Defendant City, which includes "any

dismissal[.]" Therefore, we find Richest sufficiently alleged the Board's decision

constituted a disciplinary action. We thus turn to whether it can be determined from the

face of the petition whether the Board's upholding of Richest's termination constitutes

"disciplinary action" for purposes of section 105.055.

 When interpreting section 105.055, our primary rule is "to give effect to legislative

intent as reflected in the plain language of the statute at issue." Parktown Imports, Inc. v.

Audi of Am., Inc., 278 S.W.3d 670, 672 (Mo. banc 2009). "Absent a statutory definition,

words used in statutes are given their plain and ordinary meaning with help, as needed,

 6
from the dictionary." Hudson v. O'Brien, 449 S.W.3d 87, 92 (Mo. App. W.D. 2014). "We

will look beyond the plain meaning of the statute only when the language is ambiguous or

would lead to an absurd or illogical result." Truman Med. Ctr., Inc. v. Am. Standard Ins.

Co., 508 S.W.3d 122, 124 (Mo. App. W.D. 2017).

 A statute is ambiguous when its plain language does not answer the current
 dispute as to its meaning. Ambiguities in statutes are resolved by
 determining the intent of the legislature and by giving effect to its intent if
 possible. When determining the legislative intent of a statute, no portion of
 the statute is read in isolation, but rather the portions are read in context to
 harmonize all of the statute's provisions. Rules of statutory construction are
 used to resolve any ambiguities if the legislative intent is undeterminable
 from the plain meaning of the statutory language.

BASF Corp. v. Dir. of Revenue, 392 S.W.3d 438, 444 (Mo. banc 2012) (internal citations

and quotation marks omitted).

 Richest argues that section 105.055 prohibits employers from taking "any

disciplinary action whatsoever" against public employees. Richest argues the word

"whatsoever," meaning "of any kind at all,"5 is broad enough to encompass the Board's

decision from his appeal of his termination. See Keeney v. Hereford Concrete Prods., Inc.,

911 S.W.2d 622, 624. The trial court erred, according to Richest, by not considering the

Board's decision as forming part of the disciplinary action. City argues the Board's decision

to uphold Richest's termination is not disciplinary action because it "did not effect any

change regarding his employment with the City." And because Richest was no longer

 5
 Richest cites to the American Heritage Dictionary, www.ahdictionary.com (last visited Jan. 13, 2022) for
this definition.

 7
working for the City when the Board's decision was announced, City argues the Board's

decision could not be a "dismissal" under the statute.

 Section 105.055.1(1) defines "disciplinary action" as "any dismissal, demotion,

transfer, reassignment, suspension, reprimand, warning of possible dismissal or

withholding of work, regardless of whether the withholding of work has affected or will

affect the employee's compensation." Without further statutory definition of "dismissal,"

we turn to the dictionary, which defines it as "the act of dismissing: the fact or state of

being dismissed."6 When City terminated Richest in April 2019, it is clear he suffered at

least some form of disciplinary action. But whether or not the Board's decision to uphold

the termination in November 2019 also constituted a disciplinary action pursuant to the

statute remains unclear. The answer may, for example, depend on whether Richest's appeal

to the Board was required or permissive; on whether the appeal to the Board was subject

to procedural constraints that limited the Board's ability to redress the initial decision to

dismiss Richest; or on other information that would permit the City to argue that in the

absence of exhaustion of appeal to the Board, Richest would not have been able to file a

civil action pursuant to section 105.055.7. This answer is not evident from the face of the

petition.7 We are therefore unable to determine, as a matter of law, whether the Board's

decision constituted a "disciplinary action" under the statute. As such the City is unable to

 6
 Merriam-Webster's Unabridged Dictionary, www.merriam-webster.com (last visited Jan. 13. 2022).
 7
 The Board is apparently a creation of either the CBA or by City ordinance or regulations, but this is not
established by the face of the petition and is not subject to judicial notice. Instead, the contents of the
contractual/ordinance/regulatory provisions will have to be proven as facts and until the exact nature of the Board
and the internal appeals process are known, it is impossible to determine whether their decision constitutes a
"disciplinary action".

 8
sustain its burden to demonstrate that the petition clearly establishes on its face and without

exception that Richest's claim is time barred.

 The City argues that regardless the answer to the aforesaid question, the Board's

review process has no bearing on when Richest was "dismissed." Missouri caselaw

pertaining to section 105.055.7 is admittedly scant, and no cases have addressed this

specific issue regarding the statute of limitations. Recognizing this, both Richest and City

rely on cases from other legal contexts. Richest begins by citing Sifferman v. Board of

Regents, Southeast Missouri State University, 250 F. Supp. 2d 1139 (E.D. Mo. 2003). In

Sifferman, the plaintiff alleged retaliation under Title VII in federal court after being denied

a promotion because he had previously testified against the university in a sexual

harassment lawsuit. Sifferman, 250 F. Supp. 2d at 1141-42. The university argued the

plaintiff's charge with the Equal Employment Opportunity Commission was untimely

because it was not filed within 300 days of the last adverse employment action, which the

defendant argued was the date the department denied Sifferman's promotion. Id. at 1142-

43. The court disagreed and held the last adverse employment action occurred when

Sifferman's promotion denial was affirmed by the university's internal review process. Id.

at 1144. When the internal review affirmed the department's decision, this "definitively

ended the University's review process" and became "the date of the last adverse

employment action." Id. Though not binding on this Court, Sifferman is arguably

persuasive. Here, Richest alleges he suffered a disciplinary action, and the action alleged

is similar to an adverse employment action under Title VII. City argues the Board's

 9
decision "merely failed to unwind the disciplinary action that occurred in April 2019," but

the Board's ruling may have been a separate "disciplinary action."

 In contrast, City argues our decision in Hudson v. O'Brien, 449 S.W.3d 87 (Mo.

App. W.D. 2014), supports the trial court's dismissal of the petition regardless of the ability

to appeal that dismissal to the Board. Hudson held a plaintiff need not exhaust the

administrative remedies provided by the statute before a plaintiff may file a civil suit in the

circuit court. Hudson, 449 S.W.3d at 96-97. The statute allows a state employee to file an

administrative appeal with the administrative hearing commission as one possible remedy

to a violation of section 105.055. See section 105.055.5. However, Hudson is inapplicable

because Richest is not a state employee and had no right to bring an appeal to the

Administrative Hearing Commission, which (as previously noted) affords a state employee

the full panoply of remedies, including the right to appeal from the Commission's decision.

Section 105.055 generally provides protections to "public employees" employed by "public

employers". The statute defines "public employees" as "any employee, volunteer, intern,

or other individual performing work or services for a public employer" and defines "public

employer" as, "any state agency or office, the general assembly, any legislative or

governing body of the state, any unit or political subdivision of the state, or any other

instrumentality of the state." However, subsection 5 exclusively provides that, "any state

employee may file an administrative appeal whenever the employee alleges that

 10
disciplinary action was taken against the employee in violation of this section."8 (emphasis

added). The holding of Hudson is inapplicable.

 City also relies on two Missouri cases addressing the statute of limitations for

wrongful discharge claims under a breach of contract theory, governed by section 516.100:

Brantl v. Curators of University of Missouri, 616 S.W.3d 494 (Mo. App. W.D. 2020), and

Kesler v. Curators of University of Missouri, 516 S.W.3d 884 (Mo. App. W.D. 2017). City

argues both Brantl and Kesler support the trial court's ruling because, in both cases, we

held the limitations period begins to run when a plaintiff is put on notice of a potentially

actionable injury regarding employment. Here, Richest was put on notice of a potentially

actionable injury in April 2019 when he was first notified he was terminated from his job.

 Brantl and Kesler are distinguishable from this case because they are based on the

statute of limitations for a breach of contract action, not section 105.055. Brantl, 616

S.W.3d at 498-99; Kesler, 516 S.W.3d at 893. Section 516.100 et seq. governs the statute

of limitations for civil actions in Missouri. "Civil actions . . . can only be commenced

within the periods prescribed in the following sections, after the causes of action shall have

accrued[.]" Section 516.100. "[T]he cause of action shall not be deemed to accrue when

 8
 The legislative history of section 105.055 makes this clear. Section 105.055 was most recently amended
in 2018 with the passage of Senate Bill ("S.B.") 1007. S.B. 1007 provided a statutory definition of "public
employee" and changed "state employee" to "public employee" in section 105.055.3(2). Other subsections of the
statute were also amended to apply to "public employees" instead of "employees." However, subsection 5, which
provides an administrative appeal through the administrative hearing commission, was amended by S.B. 1007 to be
made available to a "state employee" instead of an "employee." "[T]o determine a statute's plain and ordinary
meaning, the Court looks to a word's usage in the context of the entire statute[.]" Gross v. Parson, 624 S.W.3d 877,
885 (Mo. banc 2021). "It is presumed that every word, clause sentence and provision of a statute have effect and
that idle verbiage or superfluous language was not inserted into a statute." Rasmussen v. Ill. Cas. Co., 628 S.W.3d
166, 175 (Mo. App. W.D. 2021). Therefore, while the protections against disciplinary action apply broadly to
"public employees," the administrative appeals process provided in subsection 5 only applies to "state employees."

 11
the wrong is done or the technical breach of contract or duty occurs, but when the damage

resulting therefrom is sustained and is capable of ascertainment, and, if more than one item

of damage, then the last item, so that all resulting damage may be recovered, and full and

complete relief obtained." Id. (emphasis added).

 Because both Brantl and Kesler involve wrongful discharge claims based on breach

of contract, the "capable of ascertainment" standard found in section 516.100 is

appropriate. But, "this [is] not a common law wrongful termination case. Rather, this [is]

a purely statutory cause of action set forth under [section] 105.055." Hudson, 449 S.W.3d

at 91. The "capable of ascertainment" standard is expressly limited to "sections 516.100

to 516.370," which provide the limitations period for different civil causes of action.

Section 516.100; see, e.g., section 516.120 (prescribing a five-year statute of limitations

for actions upon contracts). And "when an action that would otherwise be subject to a

limitations period in [sections] 516.010 to 516.370 is subject to a different limitations

period in a separate statute . . . that different limitations period controls." Baker v. Century

Fin. Grp., Inc., 554 S.W.3d 426, 435 (Mo. App. W.D. 2018). "[W]here there is no clear

intention otherwise, a specific statute will not be controlled or nullified by a general one,

regardless of the priority of enactment." Dieser v. St. Anthony's Med. Ctr., 498 S.W.3d

419, 431 n.5 (Mo. banc 2016). Therefore, City's reliance on Brantl and Kesler is misplaced,

and the "capable of ascertainment" standard for the accrual of a cause of action under

section 516.100 does not apply to whistleblower actions under section 105.055.7.

 City further relies on Kingori v. MHM Support Services, 628 S.W.3d 181 (Mo. App.

S.D. 2021). In Kingori, the plaintiff filed a claim under the Missouri Human Rights Act,

 12
which carries a two-year statute of limitations, arguing he was denied a promotion because

of his race. Kingori, 628 S.W.3d at 183. Kingori argued his claim was timely because,

even though he learned he was denied a promotion outside the two-year window, his

supervisor had sent an email to several colleagues congratulating the promoted employee

within the statutory period. Kingori argued his supervisor's email triggered the statute of

limitations. Id. at 185. The Southern District disagreed, holding Kingori's claim of

discrimination occurred on the day Kingori learned he had not been promoted. Id. City's

reliance on Kingori is misplaced. Here, the issue is whether the Board's decision to uphold

Richest's dismissal constitutes a disciplinary action as that term is defined in section

105.055. We have already explained that the answer to this question is not apparent on the

face of the petition, preventing dismissal of the petition on the basis of the statute of

limitations as a matter of law.

 Point granted.

 Conclusion

 For the foregoing reasons, the judgment of the trial court is reversed and the cause

is remanded for further proceedings.

 __________________________________
 Gary D. Witt, Judge
All concur

 13